UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | Case No.: 14-23906-EEB |
| COUPOUNAS, LLC d/b/a GOLITE, LLC ) | |
| xxx-xx-0555 ) | Chapter 11 |
| Debtor in Possession ) | |
| ) | |
| ) | |

___

**DEBTOR'S EMERGENCY MOTION OF DEBTOR TO ESTABLISH CRITICAL PATH FOR COMPREHENSIVE SALE PROCESS RELATING TO GOING OUT OF BUSINESS SALE, BID PROCEDURES AND AUCTION**

___

### I. SUMMARY OF RELIEF REQUESTED

1. By this Motion, the Debtor in Possession requests approval of certain critical path dates regarding Debtor's need to close on the sale of its assets prior to the end of November, 2014.

### II. BACKGROUND

2. Debtor is engaged in the retail sale of lightweight outdoor gear for use by outdoor athletes. The Debtor operates retail stores offering merchandise consisting of a wide range of technical and casual outerwear.

3. The Debtor currently operates six stores in Colorado. The Debtor leases all of the store locations.

4. The Debtor has a single secured lender, GEMCAP Lending I, LLC, ("GEMCAP"). GEMCAP is owed approximately $825,000.

5. Debtor has been in discussions with two national recognized liquidation firms and anticipates entering into a "Stalking Horse" liquidation agreement with one of them in the next one or two days.

6. Debtor anticipates filing a detailed comprehensive bid procedures and sale motion as soon as such liquidation agreement is in place. Such motion will seek approval of a stalking horse liquidation bid, subject to higher and better offers either as a liquidation or as a going concern sale.

7. Debtor is a Debtor in Possession and no committee or trustee has been appointed in this case.

### III. REQUESTED CRITICAL PATH DATES

8. Debtor has been informed that to accomplish the highest return for a liquidation or auction, the sale must close prior to the critical "Black Friday" post Thanksgiving period.

9. As part of the proposed bid procedures, Debtor anticipates asking the Court to approve the following critical path dates:

    A. Setting October 27, 2014 or October 28, 2014 for an emergency hearing to consider the bid procedures and stalking horse motion.

    B. Setting November 10, 2014 as the deadline for submission of higher and better bids.

    C. Setting November 12, 2014 as the date for an auction in the event that one or more qualified competitive bids are submitted.

    D. Setting November 13, 2014 or November 14, 2014 as the date for a hearing on final approval of the sale of Debtor's assets.

### III. DEBTOR'S PREPETITION MARKETING EFFORTS.

10. Debtor's assets have been exposed to the market for at least six months.

11. In early 2014, the Debtor's management and advisors performed an analysis of the Debtor's operations and financial performance to identify potential capital sources or a sale of the company. Specifically:

    A. On February 8, 2014, the Debtor and its Financial Advisor had their initial meeting.

    B. On March 19, 2014, the Debtor sent a one page investment summary to 60 potential capital sources all of whom are characterized as institutional investors.

    C. As of March 31, 2014, the Debtor received one affirmative decline and twenty requests for a non-disclosure agreement. Debtor receive nine executed non-disclosure agreements and delivered a Confidential Investment Memorandum to those nine requestors. Two out of the nine declined to engage in any further review. Seven parties engaged in diligence and entered the data room.

    D. The initial timeline called for bids to be received by April 30, 2014, however the Debtor received no bids by that date.

E. From April 1, 2014 through August 31, 2014, Debtor identified forty additional sources (bringing total to 100) and delivered investment summaries to such sources. The Debtor continued to focus on financial partners, but also contacted some potential strategic partners (existing retail apparel companies). In this phase ten non disclosure agreements were executed and Confidential Investment Memoranda were delivered to those ten parties. None of the ten pursued further due diligence.

F. The Debtor had direct discussions with one party, which continued through July 28, 2014, when discussions were terminated by the investor.

G. Since September 1, 2014, Debtor's efforts have focused on "friends and family" and multiple parties contacted by the Debtor's principal. One of those parties remains actively engaged in the process.

12. Debtor realized that pursuit of a new capital infusion needed to be coupled with a potential sale of the company as a going concern or a liquidation sale of Debtor's asset and thus consulted with two nationally recognized liquidation companies.

13. Debtor filed its Chapter 11 petition to complete its sale process on an expedited basis.[1]

WHEREFORE, the Debtor respectfully requests the entry of an order approving the critical path dates described above and granting such other and further relief as the Court may deem just and proper.

Dated: October 20, 2014.

        MARKUS WILLIAMS YOUNG &
        ZIMMERMANN LLC

        By: *Donald D. Allen*
        Donald D. Allen, #10340
        James T. Markus, #25065
        1700 Lincoln Street, Suite 4550
        Denver, Colorado 80203-4505
        Telephone (303) 830-0800
        Facsimile (303) 830-0809
        dallen@markuswilliams.com
        jmarkus@markuswilliams.com
        Attorneys for Debtor-in-Possession

---

[1] Debtor also needed the protection of the automatic stay because its bank accounts were about to be garnished by a judgment creditor.

3